IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

GEORGE GADD,                            *
                                        *
            Plaintiff,                  *
                                        *
vs.                                     *       No. 4:08CV04229 SWW
                                        *
UNITED STATES OF AMERICA,               *
ERIC HOLDER, Attorney General, United   *
States Department of Justice, and MICHELLE *
M. LEONHART, Acting Administrator, DRUG *
ENFORCEMENT ADMINISTRATION,             *
                                        *
            Defendants.                 *

**Memorandum Opinion and Order**

Before the Court are defendants' motion and supplemental motion to dismiss or, in the

alternative, for summary judgment. The motions are ripe for determination. For the reasons

stated below, the motions to dismiss are denied and the motions for summary judgment are

granted.

**Background**

Plaintiff George Gadd ("Gadd") is employed by the Drug Enforcement Administration

("DEA") in Little Rock, Arkansas, as a Diversion Investigator ("DI"). The DEA hired Gadd in 1997

pursuant to a disabled veterans preference. On November 7, 2007, Gadd submitted a Department

of Justice Request for Reasonable Accommodation form, asking that a clerk typist be made available

to him because he suffers from carpal tunnel syndrome.[1] He described it as "a minor request in that

---

[1]Defs.' Mot. Dismiss/Summ.J., Ex. 4.

he merely wished to alert his supervisors that he may need some help with his typing."[2]  His request, which was accompanied by three documents from Dr. Charles Schultz, was approved by his immediate supervisor, Carolyn Adams; by Donald Hickman, the division supervisor in New Orleans, Louisiana; and by DEA headquarters in Washington, D.C.  The approval authorized the purchase of a recorder so that Gadd could dictate his reports and have them typed by a clerk typist.

Gadd alleges that when William J. Bryant, the Assistant Special Agent in Charge ("ASAC") of the Little Rock District Office, learned that Gadd had made a request for accommodation, Bryant reviewed the request and the medical records attached to the report.  Bryant allegedly asked  Adams whether Gadd could drive a car if he could not type.  Bryant then notified William J. Renton, Jr., the Special Agent in Charge ("SAC") of the New Orleans Field Division, of Gadd's request and opined that Gadd has serious medical issues.  Gadd asserts that neither Bryant nor Renton are part of the approval process for his reasonable accommodation request, and that Renton instructed Hickman to ask Gadd to withdraw his request.  Gadd agreed, but Hickman later learned that once a request has been submitted, it cannot be withdrawn.

In early 2008, Hickman instructed Adams to prepare the proper form to purchase a recorder with fee account funds so that Gadd could dictate his reports.[3]  Gadd says the purchase request was routed through Bryant who refused to sign it, even though Bryant has no authority to approve or deny purchases from fee account funds.  Allegedly, Bryant then contacted Renton about the purchase request, and Renton summoned Hickman.  When Renton learned from Hickman that Gadd's request could not be withdrawn, Renton got angry and said that if Gadd could not type he

---

[2]Pl's. Resp. to Defs.' Reply to Pl's. Resp. to Defs.' Mot. Dismiss/Summ.J., p.4.

[3]*Id.,* Ex. 3 to Bryant Aff.

could not drive a government-owned vehicle.  On January 9, 2008, Renton allegedly suspended Gadd from the performance of all his duties and restricted him to his desk.

The record reflects Renton forwarded the medical records that were submitted with Gadd's request for accommodation to the DEA Acting Chief Medical Officer, Dr. Bahador, who advised Gadd did not meet DEA medical standards.  Lisa Hobbs, Chief, Health Services Unit, DEA Human Resources Unit, issued a medical advisory, recommending Gadd be placed on light duty.[4]  Gadd was placed on limited duty effective January 11, 2008, and on January 25, 2008, Renton directed that Gadd not operate a government vehicle or participate in any operations outside the physical confines of the Little Rock DEA District Office.  He also directed that Gadd's office duties be limited to administrative activities and that he refrain from lifting or moving any object weighing over ten pounds.  Renton noted he was exploring the possibility of acquiring voice recognition software to accommodate Gadd's carpal tunnel.[5]  On February 21, 2008,  Dr. Martina Kukolja, Chief Medical Officer ("CMO"), issued a memorandum to Margaret Hager, Chief of Employee and Health Services for the DEA, finding Gadd could not fully perform his job duties and recommending that he remain on light duty status.[6]  Gadd filed a complaint on March 11, 2008, alleging age and disability discrimination and retaliation.[7] The DEA accepted the complaint for investigation by letter dated April 15, 2008.[8]

---

[4] *Id.*, Ex. 7 to Bryant Aff.

[5] *Id.*, Ex. 9 to Bryant Aff.

[6] *Id.*, Ex. 11 to Bryant Aff.

[7] Defs.' Mot. Dismiss/Summ.J., Ex. 1

[8] *Id.,* Ex. 2.

In a letter dated May 27, 2008, Hager advised Gadd of his proposed removal due to his unavailability for work due to his medical condition. Bryant says he served the notice on Gadd on June 4, 2008.[9] Gadd objected to his removal and the DEA appointed a Deciding Officer ("DO"). Gadd was permitted to provide evidence that he was physically capable of engaging in diversion investigatory duties. He submitted three letters written in June 2008 from three treating physicians who had examined him and who stated Gadd could perform his job duties and was not restricted in his physical activities. On September 27, 2008, the DO did not sustain Gadd's proposed removal.[10]

On October 21, 2008, the DEA issued another medical advisory, stating that Gadd should remain on light duty, not participate in 1801 duties, clandestine lab activities, or drive a government vehicle until medically cleared. The advisory stated that, due to medications Gadd was taking, he must provide additional information from his treating physician.[11] On December 10, 2008, the medical advisories were cancelled and Gadd was cleared to participate fully in his job duties, including driving a government vehicle.[12]

On September 5, 2008, Gadd requested copies of the records on which his proposed removal was based. On September 26, 2008, the DEA acknowledged his request and explained that because the receiving office was in transition, his request had not been assigned a number but would be handled expeditiously. Gadd alleges that on October 20, 2008, he administratively appealed the

---

[9]*Id.*., Ex. 12 to Bryant Aff.

[10]Defs.' Mot. to Dismiss, Bryant Aff. at ¶ 10.

[11]*Id.*, Ex. 13 to Bryant Aff. Dr. Schultz stated in one of the letters Gadd submitted in support of his request for accommodation that Gadd was taking Hydrocodone for pain.

[12]*Id.*, Ex. 14 to Bryant Aff.

refusal to provide his records.[13]  On December 18, 2008, the DEA informed Gadd that he would have to request medical records from the DEA's Health Services Unit, and that his request otherwise did not reasonably describe the records requested.

On August 27, 2008, Gadd applied for promotion to Supervisory Division Investigator in the DEA Little Rock district office.  He says that even though he was ranked best qualified, he was not selected and the DEA re-announced the position to seek additional applicants.  Gadd reapplied for the position, and also applied for positions in several other DEA offices around the country.  The Little Rock position was not filled, and Gadd was not selected for any of the other positions.

On December 24, 2008, Gadd filed a complaint in federal court.  He filed an amended complaint on February 5, 2009, and a second amended complaint on September 1, 2009.  Gadd alleges causes of action under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.*, the Privacy Act of 1974, and the Freedom of Information Act ("FOIA").  Defendants move for dismissal of Gadd's complaint pursuant to Fed.R.Civ.P. 12(b)(6), arguing he fails to state a claim for relief.  In the alternative, defendants move for summary judgment pursuant to Fed.R.Civ.P. 56.

### Standard of Review

In considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6), all facts alleged in the complaint are assumed to be true. *Doe v. Northwest Bank Minn., N.A.,* 107 F.3d 1297, 1303-04 (8th Cir.1997).  The complaint should be reviewed in the light most favorable to the plaintiff, *McMorrow v. Little,* 109 F.3d 432, 434 (8th Cir.1997), and should not be dismissed if there are pled "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

---

[13]In his response to defendants' motion to dismiss/summary judgment, Gadd submits a copy of a letter dated October 30, 2008, titled "Freedom of Information Act Appeal."  *See* docket entry 12, Ex. 8.

A motion to dismiss is not a device for testing the truth of what is asserted or for determining whether the plaintiff has any evidence to back up what is in the complaint. The issue is not whether the plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support the claims, irrespective of a judge's disbelief of a complaint's factual allegations or a judge's belief that the plaintiff cannot prove what the complaint asserts. A well-pleaded complaint may proceed even if it appears that actual proof of those facts is improbable and that recovery is very remote and unlikely. *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). A complaint cannot, however, simply leave open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery. *Twombly,* 550 U.S. at 561. Rather, the facts set forth in the complaint must be sufficient to nudge the claims "across the line from the conceivable to plausible." *Id.* at 570.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The non-moving party may not rest on mere allegations or denials of her pleading but must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587 (quoting Fed.R.Civ.P. 56(e)).

"[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8ᵗʰ Cir. 1995). The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita,* 475 U.S. at 587 (citations omitted). "Although summary judgment is to be used sparingly in employment discrimination cases, it is appropriate where one party has failed to present evidence sufficient to create a jury question as to an essential element of its claim." *Arnold v. Nursing and Rehab. Ctr. At Good Shepherd, LLC,* 471 F.3d 843, 845-6 (8ᵗʰ Cir. 2006)(internal citation omitted).[14]

### Discussion

Gadd raises two claims under the Rehabilitation Act of 1973: failure to accommodate a disability and retaliation for requesting an accommodation. He alleges four violations of the Privacy Act of 1974 and a violation of the Freedom of Information Act.

**Rehabilitation Act Claims**

The Rehabilitation Act ("the Act") prohibits the federal government from discriminating against the disabled or from failing to reasonably accommodate disabled employees. 29 U.S.C. §§ 791, 794. The Act also prohibits discrimination against any individual who has made a complaint of discrimination. *Mershon v. St. Louis Univ.,* 442 F.3d 1069, 1074 n.3 (8ᵗʰ Cir. 2006).

---

[14]Plaintiff requests the Court to refrain from ruling on defendants' motion for summary judgment until after adequate time for discovery. He failed to file an affidavit stating what facts he expects further discovery would reveal as required by Fed.R.Civ.P. 56(f). *See Dulany v. Carnahan,* 132 F.3d 1234, 1238 (8ᵗʰ Cir. 1997)(Rule 56(f) requires the filing of an affidavit showing what specific facts further discovery might unveil).

## 1. Failure to Accommodate

If a party makes a reasonable accommodation claim, he must initially establish each element of the prima facie case. *Fenney v. Dakota, Minnesota & Eastern R.Co.,* 327 F.3d 707, 712 (8th Cir. 2003). To establish a prima facie case of disability discrimination, a plaintiff must show that he was disabled; was qualified to do the essential job function with or without reasonable accommodation; and suffered an adverse action due to her disability. *Buboltz v. Residential Advantages, Inc.,* 523 F.3d 864, 868 (8th Cir. 2008).

The Act defines an individual with a disability as one who (1) has a physical or mental impairment that substantially limits one or more of such person's major life activities; (2) has a record of such impairment; or (3) is regarded as having such an impairment. 29 U.S.C. § 706(8)(B). Major life activities are those "that are of central importance to most people's lives." *Toyota Motor Mfg. v. Williams,* 534 U.S. 184, 198 (2002). These include functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. 29 C.F.R. § 1630.2(i). A substantial limitation exists if "an individual is significantly restricted as to the condition, manner or duration under which the average person in the general population can perform the same major life activity." *Gretillat v. Care Initiatives,* 481 F.3d 649, 652 (8th Cir. 2008)(quotation omitted).

Gadd alleges his "diabetes and related neuropathy is a disability affecting all his major life activities." Second Am. Compl. at ¶ 4.H. Gadd argues that the fact that he has been diagnosed with diabetes and suffers from carpel tunnel syndrome is sufficient to create a genuine issue of material fact as to whether he is disabled. However, if Gadd cannot show that his diabetes substantially limits one or more of his major life activities, he is not disabled under the Rehabilitation Act.

Generally speaking, "[m]ost disabilities from which people suffer, including diabetes, do not have a substantial enough effect on their major life activities. Health conditions that cause moderate limitations on major life activities do not constitute disabilities. . . ." *Orr v. Wal-Mart Stores, Inc.*, 297 F.3d 720, 724 (8th Cir. 2002) (citations and internal quotations omitted). *See also Weber v. Strippit, Inc.*, 186 F.3d 907, 913 (8th Cir. 1999) (heart disease that substantially impacts cardiovascular system does not automatically render a person disabled under the ADA). In resisting a summary judgment motion, a plaintiff bears the burden of presenting evidence demonstrating how an impairment substantially affects his major life activities. *Orr*, 297 F.3d at 724. A plaintiff may not "simply point to allegations made in [his] complaint but must identify and provide evidence of 'specific facts creating a triable controversy.'" *Howard v. Columbia Public Sch. Dist.*, 363 F.3d 797, 800 (8th Cir. 2004)(*quoting Jaurequi v. Carter Mfg. Co.,* 173 F.3d 1076, 1085 (8th Cir. 1999).

Gadd's Request for Accommodation included three submissions from Dr. Schultz stating Gadd is limited in typing and walking because of pain. In an affidavit submitted in support of his response to defendants' reply, Gadd states he "is required to restrict [his] physical activities, diet, exercise and take medicine to control [his] diabetes and neuropathy. This has severely hampered major lifestyles."[15] Gadd makes other allegations, however, that establish he is not disabled. Gadd states he "offered to demonstrate to the deciding official on the proposed removal action that he could in fact perform each of the physical activities that the Medical Officer opined Gadd could not perform," and that three treating physicians "all opined that Gadd could perform his job duties and was not restricted in his physical activities." *Id.* at 6.C. and D. He further claims that "[b]ased on his examination, the examining physician certified Gadd as fit for strenuous activity." *Id.* at 6.E.

---

[15]Pl's. Resp. to Defs.' Reply, [docket entry 22].

The Court finds Gadd fails to provide evidence from which a reasonable jury could find he suffered from an impairment that affected his work or any other major life activity to a substantial degree.

Gadd alleges defendants perceived him "to be disabled sufficiently to affect his major life activities." *Id.* at 4.H. He bases this claim on the fact that defendants questioned his ability to perform the physical requirements of his position, restricted him to his desk, relieved him from all his job duties, and proposed his removal. He also argues that because the DEA accommodated his disability, defendants necessarily perceived him to be disabled under the Rehabilitation Act.[16] Defendants argue Gadd fails to allege any facts that would indicate they perceived him as disabled in some major life activity.

In *Sutton v. United Airlines,* 527 U.S. 471, 793 (1999), the plaintiff alleged that the defendant, because of its vision requirement, regarded the plaintiff as unable to hold the position of a pilot. The Supreme Court held this was not a sufficient allegation to overcome a motion to dismiss: "Because the position of the global airline pilot is a single job, this allegation does not support the claim that respondent regarded petitioner as having a substantially limiting impairment." In *Knutson v. AG Processing, Inc.,* 394 F.3d 1047 (8th Cir. 2005), the plaintiff was perceived by his employer as being able to perform some but not all of the duties to which he had been assigned. The plaintiff alleged that because his employer believed he could not engage in all the activities, the employer necessarily considered him to be disabled. The Eighth Circuit stated:

> Knutson's principal argument is that 'the assignment to makeshift odd jobs' shows
> that Ag Processing regarded him as being disabled. Knutson contends that Ag
> Processing's determination that he 'could not do the job' of boiler operator

---

[16] According to Carolyn Adams, Gadd's immediate supervisor, Sharon Taylor, EEO Manager with DEA's Program for Persons with Disabilities, told Adams that Gadd's paperwork confirmed he has a disability. Defs.' Mot. to Dismiss/Summ.J., Bryant Aff., Ex. 4.

constitutes 'substantial evidence' from which a reasonable jury could determine that Ag Processing 'regarded [him] as being disabled.' (Knutson Br. at 22-23).

We do not believe Knutson's position can be squared with our cases. A reasonable jury could not have concluded, based on the evidence presented in this case, that Ag Processing regarded Knutson as unable to perform a broad class of jobs when it removed him from the position of boiler operator and assigned him to other work in the plant. Knutson himself claims that Ag Processing viewed him as capable of performing the functions inside the boiler control room (as contrasted with rodding the stokers and pulling ash), noting that Brown, the Energy Center Superintendent, was 'of the opinion that [Knutson] was perfectly capable of operating the control room in October of 1999.' (Knutson Br. at 11; J.A. 278; *see also* Knutson Br. at 4 ('Timothy was capable of pushing any button in the control room according to the plant manager. (App.309).')). That Ag Processing assigned Knutson to different job duties at identical pay undermines Knutson's claim that the company regarded him as substantially limited in the major life activity of working. *See Cooper,* 246 F.3d at 1089; *Miller,* 146 F.3d at 615. While Knutson's new duties of hosing, brooming, and painting were different from those to which he was accustomed, we reiterate that '[w]orking does not mean working at a particular job of [one's] choice.' *Id.*

In an effort to distinguish our substantial body of precedent finding insufficient evidence of perceived disability, Knutson argues that Brown's angry comment at the time of Knutson's reassignment showed that Ag Processing regarded Knutson as disabled from performing a broad class of jobs. Brown's comment instructing Knutson not to 'push a button,' however, cannot bear the weight attributed to it by Knutson. It is undisputed that Knutson was reassigned to jobs involving considerable physical activity. Knutson admits that Ag Processing-and Brown in particular-regarded him as capable of performing the control room functions of the boiler operator position, which involved monitoring gauges, turning valves, and pushing buttons. In light of those undisputed facts, Brown's comment cannot reasonably be taken as an admission that Ag Processing regarded Knutson as physically unable to push a button.

394 F.3d at 1052 -53.

The fact that DEA officials proposed Gadd's removal does not establish defendants regarded him as disabled. According to Bryant, he believed Gadd's medical records submitted with his request for accommodation indicated Gadd had severe physical problems for which he was taking hydrocodone. Based on his almost daily observation of Gadd, Bryant said he had no reason to believe Gadd was disabled as set forth in the medical records, and when he was told Gadd was not

pursuing his request, Bryant assumed Gadd made the decision to withdraw his request because the records were inaccurate.[17] While there is evidence that defendants questioned Gadd's ability to perform his duties as a DI, particularly his ability to safely drive a vehicle, the Court finds Gadd presents no credible evidence from which a reasonable jury could find defendants perceived him as disabled under the definition of the Act.

Even if Gadd were to establish a genuine issue of material fact as to whether he meets the definition of disabled under the Act, the Court finds he cannot show sufficient evidence that defendants failed to accommodate his disability. An employer's failure to make a reasonable accommodation is a separate form of prohibited discrimination under the Act. *Peebles v. Potter,* 354 F.3d 761, 765 (8th Cir.2004). If an employee requests an accommodation, the employer must engage in an interactive process to determine whether reasonable accommodations are possible. *Ballard v. Rubin,* 284 F.3d 957, 960 (8th Cir. 2002). If such accommodations are possible, then the employer must reasonably accommodate that request, but need not provide the exact accommodation requested. *Cravens v. Blue Cross & Blue Shield,* 214 F.3d 1011, 1019 (8th Cir.2000).

To prove that an employer failed to participate in an interactive process regarding a reasonable accommodation, an employee must show the following: (1) that the employer knew he was disabled; (2) that he requested accommodations; (3) that the employer did not make a good faith effort to assist him in making accommodations; and (4) that the employer could have reasonably accommodated, but for its lack of good faith. *Id.* at 1021. When an employer fails to engage in an interactive process, that is prima facie evidence of bad faith. *Ballard,* 284 F.3d at 960.

The evidence reflects that defendants immediately discussed with DEA headquarters how

---

[17]Defs.' Mot to Dismiss/Summ J., Bryant Aff., Ex. 4 at ¶ 6; Defs.' Br. in Supp. of Reply at n.4.

best to accommodate Gadd's request for assistance with typing, suggesting finding a typist as well as installing voice recognition software which would allow Gadd to speak and print, "typing" documents himself.[18] Defendants prepared a request for the acquisition of dictation equipment on January 9, 2008,[19] and continued to discuss how best to accommodate Gadd after he was placed on limited duty.[20] Although there was a delay as defendants determined whether Gadd was capable of performing all his job duties, Gadd admits defendants purchased a recorder for his use.[21]

Gadd complains that none of the defendants ever discussed these ideas for equipment or software purchases with him and therefore, they failed to engage in an interactive process to accommodate his disability. There is no *per se* liability for failure to engage in an interactive process. *Alexander v. Northland Inn,* 321 F.3d 723, 728 (8th Cir. 2003). The Court finds there is no credible evidence from which a reasonable jury could find defendants failed to accommodate Gadd's request for assistance.

## 2. Retaliation

Gadd claims defendants retaliated against him for seeking an accommodation by suspending him from the performance of his job duties and restricting him to his desk from January 11, 2008, until December 24, 2008. He also claims that as retaliation, Renton gave the DEA Chief Medical Officer ("CMO") his confidential medical records that were attached to his request for accommodation and thereby procured a specious medical opinion stating Gadd was not fit to

---

[18]Defs.' Mot. Dismiss/Summ. J., Bryant Decl., Ex. 4.

[19]*Id.*, Ex.3.

[20]*Id.*, Ex. 5

[21]*Id.*, Ex. 6.

perform his job duties. Based on that opinion, defendants proposed Gadd's removal. Gadd alleges it is unheard of for the DEA to propose an employee's removal without first having the employee undergo a fitness for duty examination performed by a DEA physician. As further evidence of retaliation, Gadd asserts: the medical officer's opinion contained false and inaccurate statements; he had always received excellent job performance appraisals; job performance requirements cited by the CMO had never been adopted by the DEA; he had never been informed of the physical job requirements cited by the CMO; defendants did not comply with statutes and regulations in proposing his removal; Bryant directed Adams, his immediate supervisor not to provide a written statement that Gadd could perform his job duties; and that his proposed removal violated regulations requiring waiver of medical standards to accommodate a disability and prohibiting disqualification from a position solely on the basis of medical history.

Gadd further complains that he offered to demonstrate to the DO on the proposed removal action that he could perform each of the physical activities the CMO said he could not perform but the DO refused; that on July 2, 2008, at his own expense, he supplied letters from three treating physicians who opined he could perform his job duties and was not restricted in his physical activities; that in August 2008 he underwent a physical performed by a DEA physician who certified Gadd fit for strenuous activity; that the DEA issued a medical advisory in October 2008, continuing the restriction on Gadd from performing his job duties; and that Renton's and Bryant's actions were partially motivated by personal and improper bias against Gadd.

A claim of retaliation under the Act has the following elements: protected activity, adverse action taken by the employer against the employee, and a causal link between the two. Proof of an adverse employment action requires a "tangible change in duties or working conditions that

constitute [ ] a material employment disadvantage." *Cossette v. Minnesota Power & Light,* 188 F.3d 964, 972 (8th Cir.1999) (citations omitted) (analyzing ADA case, which uses the same standards). If a prima facie case is made, the burden of production shifts to the defendant to proffer a legitimate non-discriminatory reason for the adverse action. The burden then shifts back to the plaintiff to show that the defendant's reason is a pretext for discrimination. *Mershon,* 442 F.3d at 1074.

The undisputed facts are that Gadd submitted a request for accommodation on November 7, 2007. With his request, he attached documents from one of his treating physicians, who described the pain and other complications arising from diabetes and carpal tunnel. The physician further noted Gadd was taking a powerful paid medication. As a result of a review of the records provided by Gadd, defendants placed Gadd on desk duty. In a memo dated January 25, 2008, Renton wrote to Hickman:

> This is to confirm that pursuant to DEA Personnel Manual (PM), Chapter 27, Section 2735.17, Diversion Investigator (D/I) George R. Gadd was placed on limited duty effective January 11, 2008, due to pending medical issues. The memorandum dated January 11, 2008, to my attention from Lisa Hobbs, Health Services Unit, and copied to D/I Gadd, stated the recommendation of DEA's Chief Medical Officer (CMO) that D/I Gadd be placed on limited duty and "should not participate in 1801 duties or clandestine laboratory activities until medically cleared by the CMO."
> Therefore, pursuant to the recommendation of the CMO and the authority of PM 2735.17, D/I Gadd shall refrain from operating a OGV or participating in any operations outside the physical confines of the DEA Little Rock Office (LRDO). Within the office, D/I Gadd's duties shall be limited to administrative activities any any other light duties. For his safety and the safety of others, D/I Gadd shall also refrain from lifting or moving heavy objects, including any object exceeding tne pounds in weight. D/I Gadd's limited duty status shall remain in effect pending the decision of the DEA's Health Services Unit concerning his fitness for duty. Please be advised that I am exploring the possibility of acquiring voice recognition software for use with DI Gadd's Firebird to accommodate his carpal tunnel syndrome, or if this is not feasible, other reasonable accommodation will be provided.

Defs.' Mot. to Dismiss/Summ.J., Ex. 3. Gadd claims that not allowing him to drive a government vehicle or participate in 1801 duties or clandestine lab activities basically left him with no job duties.

He also asserts that in 2003 he was not suspended from his job duties (except clandestine lab activities) even though he was found not to meet the physical standards for a DI and he had taken hydrocodone. Gadd argues the different treatment now is because he submitted a request for accommodation.

Gadd asserts that in retaliation for seeking an accommodation, Renton gave the DEA Chief Medical Officer his confidential medical records that were attached to his request for accommodation. He alleges that based upon these records, Renton procured a "specious" medical opinion finding Gadd unfit to perform his employment duties. He also alleges that the DEA CMO found that he was not fit for duty but failed to examine Gadd and ignored other physicals which certified him for duty. Gadd alleges that the CMO's report contains false and inaccurate information and that he was required to submit letters from his treating physicians at his own expense.[22]

In *Burlington Northern and Santa Fe Ry. Co. v. White,* 548 U.S.53 (2006), the Supreme Court replaced the requirement that the plaintiff show an adverse employment action with the requirement that the plaintiff establish that a reasonable employee would have found the challenged retaliatory action materially adverse. A materially adverse action is one that would "dissuade a reasonable worker from making or supporting a claim of discrimination." *Id.* at 67 (internal quotation and citation omitted),

The retaliatory actions must produce "a materially significant disadvantage." *Devin v. Schwan's Home Serv., Inc.,* 491 F.3d 778, 786 (8th Cir. 2007). "[W]here an employer engages in extreme, systemic retaliatory conduct resulting in serious employment consequences, . . . such conduct might very well meet the *White* standard." *Id.* at 788. In *Higgins v. Gonzales,* 481 F.3d

---

[22]Sec.Am.Compl. at 6.B.

578 (8th Cir. 2007), the plaintiff was removed from her primary job; denied supervision, mentoring and training; subjected to a "whispering campaign" about her performance; formally complained about; recommended for termination; and transferred to a different office. The Eighth Circuit held she failed to meet her burden of establishing a reasonable employee would have found the challenged retaliatory conduct materially adverse. *Id.* at 591.

In *O'Brien v. Dept of Agriculture,* 532 F.3d 805, 808 (8th Cir. 2008), the plaintiffs alleged that after their EEOC activity,

> Trice scrutinized Appellants' travel documents arising out of a training session they attended in San Diego, California and issued a memorandum stating that they had acted improperly in relation to their travel vouchers; did not allow Peterson to serve as acting state administrative officer though Manuel had designated her to do so; suspended O'Brien's DEU authority; sent partial files concerning the secretarial applicants to regional and national headquarters to be reviewed; did not allow O'Brien to attend a training session in Texas; failed to respond to Peterson's request to work from home in a sufficient manner; denied O'Brien a performance award; discussed suspending them; and attempted to institute disciplinary action against them. In addition to the discrete events described above, Appellants state, without specificity, that Trice: interfered with their work on a daily to weekly basis; embarrassed, isolated, and ostracized them; closely scrutinized and criticized their work; and increased their workload.

The Eighth Circuit agreed that those allegations "viewed as a whole, do not satisfy the 'significant harm' standard imposed by the materially adverse element." *Id.* at 808. The Court finds there is no evidence from which a reasonable jury could find that placing Gadd on limited duty "created a situation so unbearable or bleak that a reasonable employee would have been dissuaded from complaining about discrimination in such an environment." *Higgins*, 481 F.3d at 590. Further, the Court finds no reasonable employee would be dissuaded from seeking a reasonable accommodation because that employee thought a medical officer might make a decision based upon records provided by that employee.

Defendants further argue that there is no causal connection between any action taken against Gadd and his request for accommodation. They assert the decision to place restrictions on Gadd and to propose his removal resulted from the review of medical records Gadd attached to his request for accommodation not from his seeking an accommodation. Defendants assert that Gadd's proposed removal resulted from the forwarding of the medical records which Gadd provided, and neither Bryant nor Renton proposed his removal. They reviewed the records and questioned whether, in light of his own assertions, Gadd was capable of performing his duties. It was the review of the medical records, not the submission of a request for accommodation that led to the proposed removal.

**Privacy/FOIA Claims**

Gadd asserts defendants violated his rights under the Privacy Act when (1) Renton disclosed the medical records Gadd submitted in support of his request for accommodation; (2) defendants failed to maintain accurate and complete records; and (3) defendants failed to produce the records he requested in September 2008. Gadd also brings his claim for failure to produce records under the FOIA.

**Privacy Act Claims**

The Privacy Act prohibits federal agencies from "disclos[ing] any record which is contained in a system of records" without the prior written consent of [the individual] to whom the record pertains." 5 U.S.C. § 552a(b). "[T]he only disclosure actionable under section 552a(b) is one resulting from a retrieval of the information initially and directly from the record contained in the system of records." *Doe v. Dept of Veterans Affairs,* 519 F.3d 456, 461 (8th Cir. 2008)(internal quotation and citation omitted). "[T]he purpose of the Act 'is to preclude system of records from

serving as the *source* of personal information about a person that is then disclosed without the person's prior consent.'" *Id.*

Gadd claims defendants violated the Privacy Act when Renton disclosed the medical records submitted in support of Gadd's request for accommodation. He argues that by making a request for accommodation, the medical records he submitted in support became part of a system of records. He also argues defendants violated their own guidelines that provide that all records submitted only be used to consider the request for accommodation.

The facts are that Gadd was the source of the medical records in dispute here. He supplied three documents from Dr. Schultz in support of his request for accommodation. Bryant saw the request and forwarded it and the attached medical records to his superior, Renton. There is no allegation or evidence that defendants disclosed documents they initially obtained from a system of records. The Court finds Gadd fails to state a claim as to the disclosure.

The Privacy Act requires that an agency "maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, time lines and completeness as is reasonably necessary to assure fairness to the individual in the determination." 5 U.S.C.§ 552a(e)(5). In support of his allegation that defendants failed to comply with this requirement, Gadd claims that in July 2008, he submitted to the DEA letters from three treating physicians who stated Gadd was not restricted in his physical activities and can perform his job duties. In October 2008, the DEA asked Gadd to submit letters from his physicians addressing the issue of whether he has any medical restrictions on his ability to perform his job. Gadd alleges this shows defendants did not maintain accurate and complete records because they already had the letters from the three physicians. He also points out that the Chief Medical Officer ("CMO")

determined he was unable to perform his job duties without reference to DEA-performed physicals which showed Gadd was not restricted in his physical activities, and that the DEA did not provide the person who investigated his complaint of failure to accommodate with the three physicians' letters to rebut the DEA medical officer's opinion that he could not perform his job duties. He further alleges that defendants' decision not to fill the supervisory position in Little Rock rather than select Gadd and the fact that he was not chosen for the other supervisory positions indicates that the DEA's records concerning his fitness for duty do not include the August 2008 DEA-administered physical examination and the three letters from Gadd's physicians, otherwise he would have received fair consideration for the positions. Thus, Gadd asserts defendants' incomplete and inaccurate records were the cause of his failure to be promoted.

In response, defendants point out that the CMO's opinion that Gadd was not fit to perform his duties was made in February 2008, and the May 2008 decision to propose his removal was based on the February 2008 opinion. Thus, those decisions were not affected by the three physician letters submitted by Gadd in July 2008 or the physical examination results certified in August 2008. There is nothing in the record to support Gadd's allegation that inaccurate medical records led to his being placed on desk duty or his proposed removal.

To state a cause of action under §552a(e)(5), a plaintiff must allege intentional or willful failure to maintain accurate records. 5 U.S.C. § 552a(g)(1) and (4). Gadd alleges the DEA's lack of maintenance was intentional and willful, but he submits no evidence in support. A plaintiff must support his allegations with sufficient probative evidence to permit a finding in the plaintiff's favor based upon more than mere speculation, conjecture, or fantasy. *Putnam v. Unity Health Systems,*

*Inc.,* 348 F.3d 732, 733-34 (8th Cir. 2003).[23] The Court finds Gadd fails to set forth evidence from which a reasonable jury could find willful or intentional conduct by defendants in maintaining records. Therefore, the Court grants defendants' motion for summary judgment as to Gadd's claims that defendants failed to maintain records in violation of the Privacy Act.

In his third claim brought under the Privacy Act, Gadd complains defendants violated 5 U.S.C. § 552a(d)(1), which provides that an agency that maintains a system of records must provide upon request copies of the records pertaining to that person. Gadd alleges that on September 5, 2008, he requested a copy of the records upon which his proposed removal was based, and on September 26, 2008, the agency responded that it was undergoing a reorganization and that his request would be handled as expeditiously as possible. The DEA did not grant or deny his request at that time. Gadd alleges that on October 20, 2008, he administratively appealed "said refusal to provide the records." Sec. Am. Compl. at ¶9.

A plaintiff must exhaust administrative remedies before seeking judicial review under the Privacy Act. *Elnashar v. United States Department of Justice,* 446 F.3d 792 (8th Cir. 2006); *Dickerson v. Office of Personnel Management,* 828 F.2d 32, 40 (D.C.Cir. 1987). The declaration of Katherine Myrick establishes that Gadd failed to do so for at least two reasons. First, he did not complete the process before the DEA. In a letter dated December 18, 2008, Myrick informed Gadd that he should request medical records from the DEA Health Services Unit and he must adequately describe the records sought. He did neither. Second, Gadd did not complete the administrative appeals process. He was required to appeal to the Office of Information and Privacy of the Department of Justice. He did not. He alleges any further administrative action would be futile

---

[23]Gadd added his allegation of intentional and willful only after defendants pointed out that such an allegation was a necessary element to state cause of action.

because defendants' conduct was willful and intentional, citing 5 U.S.C. § 7513 and defendants' refusal to honor a subpoena for the documents.  Unlike the FOIA, the Privacy Act contains no "constructive exhaustion" provision.  *Pollack v. Department of Justice,* 49 F.3d 115, 116 n.1 (4th Cir. 1995).  The Court finds Gadd's claim that defendants unlawfully denied his request for documents under 5 U.S.C. §552a(d)(1) should be dismissed for failure to exhaust.

Gadd asserts the same claim under the FOIA.  Defendants argue Gadd failed to exhaust his administrative remedies under the FOIA as well.  Under the FOIA, the requirement that a requestor exhaust administrative remedies is inapplicable where U.S.C. § 552(a)(6)(C) is applicable.  This statute provides in part:

> Any person making a request to any agency for records under paragraph (1), (2), or (3) of this subsection shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply within the applicable time limit provisions of this paragraph.

Section 552(a)(6)(C) does not apply where no action is filed before the agency notifies the requestor of its decision and notifies the requestor of his appeal rights.  In *Oglesby v. U.S. Dept of Army,* 920 F.2d 57, 61 (D.C.Cir. 1990), the court stated:

> The initial question before us is whether appellant must actually exhaust his administrative remedies before seeking judicial review. Briefly summarized, we find that 5 U.S.C. § 552(a)(6)(C) permits a requester to file a lawsuit when ten days have passed without a reply from the agency indicating that it is responding to his request, but that this option lasts only up to the point that an agency actually responds. Once the agency has responded to the request, the petitioner may no longer exercise his option to go to court immediately. Rather, the requester can seek judicial review only after he has unsuccessfully appealed to the head of the agency as to any denial and thereby exhausted his administrative remedies. Thus, if the agency responds to a FOIA request before the requester files suit, the ten-day constructive exhaustion provision in 5 U.S.C. § 552(a)(6)(C) no longer applies; actual exhaustion of administrative remedies is required.

Here, Myrick's denial letter was sent December 18, 2008. Gadd did not file a FOIA action until September 1, 2009. Gadd could invoke §552(a)(6)(C) only before December 18, 2008. He failed to do so. He therefore was required to exhaust his administrative remedies.

Gadd submits a copy of a letter dated October 30, 2008, titled "Freedom of Information Act Appeal," and addressed to:

U.S. Department of Justice
Drug Enforcement Administration
Attn: SARO Katherine Myrick
700 Army Navy Drive
Arlington, Virginia 22202

In the letter, Gadd says he received Myrick's letter of September 26, 2008, indicating the FOIA office was in transition and that his request had not been assigned a case number. By his letter, which Myrick says she did not receive, Gadd states he is notifying Myrick of his legal option under the FOIA to file a lawsuit because the DEA did not disclose the records he requested within twenty days.

Gadd filed the complaint before the Court on December 24, 2008. On September 1. 2009, Gadd amended the complaint to add an FOIA claim. There is no record of Gadd appealing the December 18, 2008 DEA denial of his request for records. According to the December 18 letter, Gadd had sixty days to appeal the denial, and was instructed to forward any appeal to the Department of Justice, Office of Information and Privacy, in Washington, D.C. There is no evidence that Gadd appealed the denial of his request to the Department of Justice.

Gadd argues the exhaustion requirement should be waived because under 5 U.S.C. §7513(e), he is entitled to the documents on which his removal was based. He made a request for those documents and it was denied. He asserts, therefore, that defendants failure to comply with §7513 excuses his failure to exhaust.

Section 7513 addresses the procedures an agency must follow when proposing certain personnel actions, including removal. It provides that "[c]opies of the notice of proposed action, the answer of the employee when written, a summary thereof when made orally, the notice of decision and reasons therefor, and any order effecting an action covered by this subchapter, together with any supporting material, shall be maintained by the agency and shall be furnished to the Board upon its request and to the employee affected upon the employee's request." 5 U.S.C. § 7513(e). The implementing regulations at 5 C.F.R. 752.404(b)(1) provide: "The notice of proposal shall inform the employee of his or her right to review the material which is relied on to support the reasons for action given in the notice." "The agency shall give the employee a reasonable amount of official time to review the material relied on to support its proposal . . ." 5 C.F.R. § 752.404(c)(1).

In *Murry v. Dept. of Defense,* 92 M.S.P.R. 361, 367 (2002), the Merit System Protection Board found that all procedures under 5 U.S.C. § 7513 and implementing regulations had been followed where an employee appealing a suspension received written notice of the proposed action, the reasons for it, and "had an opportunity to review the material on which the agency relied to bring the action." *Id.* at 367. Gadd states he was allowed to review the records upon which his proposed removal was based and found that they were the same medical records upon which his suspension from duties was based.[24]

The Court finds defendants are entitled to summary judgment on Gadd's claim under the FOIA because he failed to exhaust administrative remedies and is not entitled to constructive exhaustion.

## Conclusion

---

[24]Pl's. Resp. to Mot. Dismiss/Summ.J. at p. 20, ¶3.

IT IS THEREFORE ORDERED that defendants' motion for summary judgment [docket entry 6] and supplemental motion for summary judgment [docket entry 58] are granted.[25] Plaintiff's complaint is dismissed.

DATED this 5th day of January, 2010.


/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE

---

[25]Plaintiff's motion to amend/correct [docket entry 120] is denied.